UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE L. ORTIZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15-cv-40037-TSH |
| | ) |
| THE CITY OF WORCESTER, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER ON JOINT MOTION BY PLAINTIFF AND HIS PRIVATE INVESTIGATOR TO QUASH SUBPOENA FOR THE INVESTIGATOR'S TESTIMONY AND FOR PROTECTIVE ORDER
(Dkt. No. 64)

I. RELEVANT BACKGROUND

In this case, plaintiff Jose L. Ortiz ("Plaintiff") has sued the City of Worcester, its City Manager, its Chief of Police, and four detectives assigned to the city's Gang and Vice Squad. In a seven-count complaint, he asserts violations of his constitutional rights under the Fourth and Fourteenth Amendments to the United State Constitution pursuant to 42 U.S.C. § 1983, and associated state law claims (Dkt. No. 1). According to the complaint, Plaintiff's claims are based on events that occurred on March 8, 2014 when Worcester detectives executed a search warrant at 1069 West Boylston Street. Plaintiff, who was working as a livery driver on the day in question, was directed by his employer to drive one Luis Garcia-Tobar to 1069 West Boylston Street. Plaintiff and his passenger arrived at the address as the search warrant was being executed. Mr. Garcia-Tobar was arrested. Plaintiff was allegedly assaulted by police officers, handcuffed, and dragged into the house at 1069 West Boylston Street before the officers on the scene were ordered to release him for transportation by ambulance to the hospital (*id.* at 3-7, ¶¶ 17-29, 51-76). Jeremiah Coffey was also arrested at 1069 West Boylston Street on March 8, 2014, and was subsequently convicted and incarcerated (Dkt. No. 82-6 at 3).

1

II. THE DISCOVERY DISPUTE

Mr. Coffey was a percipient witness of some of the interactions between Plaintiff and the defendant detectives on March 8, 2014 (Dkt. No. 65-2). On October 19, 2016, Richard P. Rand, a private investigator employed by Plaintiff's counsel, met with Mr. Coffey at MCI-Concord and obtained a handwritten statement from Mr. Coffey detailing what he had observed on March 8th. Mr. Coffey did not know the names of the police detectives who executed the search warrant at his residence. On photographs provided to Mr. Coffey, he identified by descriptive nicknames some of the police officers who executed the warrant at 1069 West Boylston Street (*id*. at 4-7). Mr. Rand signed his name to Mr. Coffey's statement as a witness (*id.* at 1-3). Plaintiff's counsel proceeded to produce a copy of Mr. Coffey's statement, with the attached annotated photographs, to the defendants.

On or about November 21, 2016, counsel for the defendants issued a deposition subpoena to Mr. Rand, commanding him to appear at a stated address in Worcester on December 19, 2016 at 10:00 a.m. to give deposition testimony on the topic of "[his] investigation in connection with [the case of Jose L. Ortiz v. City of Worcester, et al.] and Jeremiah Coffey, Jr." (Dkt. No. 65-3 at 1). Plaintiff's counsel sought to dissuade defense counsel from proceeding with Mr. Rand's deposition on the grounds that there was little to nothing that could be asked of Mr. Rand that would not be protected by the work product doctrine or the attorney-client privilege. Defendants declined to withdraw the subpoena (Dkt. No. 65-4). Presently before the court is an ensuing motion, filed jointly by Plaintiff and Mr. Rand, to quash the deposition subpoena directed to Mr. Rand and for a protective order precluding the defendants from seeking his testimony on grounds of attorney-client privilege and work product protection (Dkt. No. 64) ("the Motion"). The defendants oppose the Motion (Dkt. No. 66). The court heard argument from the parties on

2

April 4, 2017 and the Motion is ripe for decision (Dkt. No. 92). For the reasons set forth below, the court grants the Motion in part and denies it in part.

   III.   ANALYSIS

The Motion raises the following two issues: (1) whether the defendants are entitled to discover *facts* learned by Mr. Rand during the course of his investigation; and (2) whether plaintiff's production of Mr. Coffey's statement is a waiver of work product protection, and, if so, the scope of any such waiver. These issues were identified and ably addressed by Magistrate Judge Robert Collings in his opinion in *Bear Republic Brewing Co. v. Central City Brewing Co.*, 275 F.R.D. 43 (D. Mass. 2011), in which he ruled on a discovery dispute that arose in circumstances very similar to those in the instant case. The *Bear Republic* opinion is a substantial basis for the following rulings.

   1. Discovery of Facts Learned by Mr. Rand During his Investigation

The deposition subpoena directed to Mr. Rand, as previously noted, seeks testimony from him about his investigation in connection with Plaintiff's lawsuit. The subpoena does not attempt to command the production of documents, such as notes made by Mr. Rand related to his investigation or emails to or from Plaintiff's counsel (Dkt. No. 65-3). To the extent the defendants seek testimony from Mr. Rand about facts related to Plaintiff's case that he has learned through his investigation, there is a substantial body of case law holding that the defendants are entitled to discover this information. *See Bear Republic*, 275 F.R.D. at 45 (the answer to the question of whether a party can require an opponent's investigator to testify to facts learned during the course of an investigation "is manifestly in the affirmative"). *See also U.S. v. Dentsply Int'l*, 187 F.R.D. 152, 155-57 (D. Del. 1999) (directing government to answer an interrogatory requesting that the Department of Justice ("DOJ") reveal all facts relevant to the

DOJ's case against the defendant that were known to 184 individuals and entities interviewed by the DOJ; collecting additional cases); *Laxalt v. McClatchy*, 116 F.R.D. 438, 442 (D. Nev. 1987) (the "deponents must answer questions which seek to discover . . . relevant facts in the case, regardless of whether those facts were discovered in their roles as defendants' investigators") (citing *Eoppolo v. Nat'l R.R. Passenger Corp.*, 108 F.R.D. 292 (E.D. Pa. 1985)). Plaintiff and Mr. Rand have not pointed to any contrary authority. Accordingly, the court rules that the defendants are entitled to question Mr. Rand about facts he learned during his investigation into Plaintiff's allegations.

Courts that have ruled that an investigator employed by a party's attorney must disclose facts learned during an investigation have also, however, noted the risk that "a[n investigator's] discussion of factual matters may reveal counsel's tactical or strategic thoughts." *Laxalt*, 116 F.R.D. at 443 (citing *Powell v. U.S. Dept. of Justice*, 584 F. Supp. 1508, 1520 (N.D. Cal. 1984)). *See Bear Republic*, 275 F.R.D. at 45. "The caselaw dealing with attorneys' investigators shows that they should generally be afforded the same protection as the attorney for whom they work." *Alexander v. F.B.I.*, 192 F.R.D. 12, 18 (D.D.C. 2000). The work product doctrine protects tangible work product, *see* Fed. R. Civ. P. 26(b)(3)(A), and intangible work product, such as an investigator's oral communications with a party's counsel about, for example, the structure of the investigation and impressions gleaned from interviews conducted by the investigator, disclosure of which would tend to reveal counsel's tactical or strategic thoughts or evaluation of the case. *See Bear Republic*, 275 F.R.D. at 45; *Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001); *Alexander*, 192 F.R. at 18. "As a result, at a deposition of an investigator, counsel must '. . . carefully tailor his [or her] questions in the deposition so as to elicit specific factual material and

avoid broad based inquiries, . . . which could lead to the disclosure of trial strategies.'" *Bear Republic*, 275 F.R.D. at 45 (quoting *Laxalt*, 116 F.R.D. at 443).

Borrowing from Magistrate Judge Collings' opinion in *Bear Republic*:

> [W]hat is discoverable are the *facts* Mr. [Rand] learned during the course of his investigation. Unless there has been a waiver of the work product protection, . . . Rule 26(b)(3)(A), Fed. R. Civ. P. protects from disclosure ". . . documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party. . .". And it is clear that Mr. [Rand's] work was for a "party", [Plaintiff], and was done "in anticipation of litigation or for trial." Thus, any reports Mr. [Rand] prepared for [Plaintiff's] counsel would not be discoverable (absent waiver), but the *facts* recited in the reports would be. For these reasons, the [c]ourt will not quash the deposition subpoena to Mr. [Rand] to the extent that [the defendants] seek[] testimony respecting the facts which he uncovered during the course of his investigation.

*Id.* at 45-46 (quoting Fed. R. Civ. P. 26(b)(3)(A)).

2. Waiver of Work Product Protection Based on Production of Mr. Coffey's Statement

Defense counsel argue in their opposition to the Motion that they are entitled to elicit testimony from Mr. Rand about the circumstances of his interview of Mr. Coffey, including the writing and the signing of Mr. Coffey's statement, who was present when Mr. Coffey wrote the statement,[1] whether Mr. Coffey was offered any inducement for providing a statement,[2] and

---

[1] In the defendants' opposition to the Motion, they represent that Plaintiff's counsel, attorney Hector Pineiro, attended Mr. Rand's meeting with Mr. Coffey (Dkt. No. 66 at 2). This representation appears to be undisputed. Accordingly, this opinion assumes that both Mr. Pineiro and Mr. Rand met with Mr. Coffey at MCI Concord on October 19, 2016 for the purpose of obtaining a written statement from him.

[2] In their opposition to the Motion, the defendants assert that there have been allegations of illegal inducements paid to witnesses in two other cases in which Mr. Pineiro has tendered affidavits of witnesses (Dkt. No. 66 at 2). This reference appears to be intended to invoke the crime-fraud exception to the attorney-client privilege and the work product doctrine as a basis for deposing Mr. Rand. "'To bring the crime-fraud exception to bear, the party invoking it must make a prima facie showing: (1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; *and* (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity.'" *In re Grand Jury Proceedings*, 802 F.3d 57, 65-66 (1st Cir. 2015) (quoting *In re*

5

what, if anything, was said, in the course of the meeting during which Mr. Coffey wrote his statement (Dkt. No. 66 at 2). They claim this right on the grounds that Mr. Rand made himself a fact witness by signing Mr. Coffey's statement (*id.* at 1). The defendants offer no support for this theory.

In the court's view, the question posed by Plaintiff's production of Mr. Coffey's statement is, instead, whether disclosure of the statement constituted a waiver of work product protection and, if so, the extent of that waiver. *See Bear Republic*, 275 F.R.D. at 46; *Commonwealth of Mass. v. Mylan, Inc.*, Civil Action No. 2003-11865-PBS, 2010 WL 2545607, at **1-2 (D. Mass. June 21, 2010). Mr. Coffey's written statement, which was obtained by Plaintiff's counsel and his investigator, is indisputably work product, and, therefore, a document that Plaintiff was not required to produce in the absence of a showing by the defendants of substantial need. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (statements, correspondence, and memoranda created or taken by an attorney or his agent in the course of his representation of a party constitute work product); Fed. R. Civ. P. 26(b)(3)(ii) (a party is not ordinarily required to produce work product to an opponent unless the opponent shows substantial need of the

---

*Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 75 (1st Cir. 1999)); *see also In re Grand Jury Subpoena*, 220 F.R.D. 136, 152 (D. Mass. 2004) (a party seeking to invoke the crime fraud exception to the work product doctrine must provide prima facie evidence that its claim of crime or fraud has some foundation in fact). Whatever may be required to establish a prima facie showing for purposes of invoking the crime-fraud exception, a brief representation by counsel in a legal memorandum that there are allegations of fraud in other cases is plainly insufficient to meet a party's threshold burden of making a prima facie evidentiary showing sufficient to warrant piercing the attorney-client privilege or work product protection. The defendants have pointed to no evidence supporting crime or fraud by Plaintiff in procuring Mr. Coffey's statement. To the contrary, at his deposition, Mr. Coffey testified that he was never offered any inducement by Mr. Pineiro (or anyone else) to make a statement about what he saw on March 8, 2014 (Dkt. No. 82-6 at 21). The defendants have offered no evidence to support reliance on the crime-fraud exception as a basis for deposing Mr. Rand. Accordingly, the court's ruling does not, in any way, rest on the crime-fraud exception to the attorney-client privilege or work product protection.

materials). It is undisputed that Plaintiff's counsel intentionally produced a copy of Mr. Coffey's statement to the defendants, thereby waiving work product protection in connection with the document. *See Bear Republic*, 275 F.R.D. at 46-47.

Federal Rule of Evidence 502 applies in the event of disclosure of information protected by the work product doctrine. It provides, in pertinent part, as follows:

> (a) DISCLOSURE MADE IN A FEDERAL PROCEEDING OR TO A FEDERAL OFFICE OR AGENCY: SCOPE OF A WAIVER. When the disclosure is made in a federal proceeding . . . and waives . . . work product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1) The waiver is intentional;
> (2) The disclosed and undisclosed communications or information concern the same subject matter; and
> (3) They ought in fairness to be considered together.

Fed. R. Evid. 502(a) (2016).

Applying the terms of Rule 502(a), by producing Mr. Coffey's statement, Plaintiff has waived protection for undisclosed communications, tangible or intangible, which concern the same subject matter, and which ought, in fairness, to be considered in conjunction with that subject matter. The "subject matter" as to which Plaintiff has waived work product protection is Mr. Coffey's written statement. "What 'in fairness' should be 'considered' along with what has been disclosed is all the circumstances involved with respect to this [statement], including how it came to be obtained, at whose direction it was obtained, and the manner in which it was obtained . . . [and including] any written or oral communications between [Mr. Rand] and counsel for [Plaintiff] with respect to [Mr. Coffey's statement]." *Bear Republic*, 275 F.R.D. at 49-50 (quoting Fed. R. Evid. 502(a)). The defendants are entitled to testimony from Mr. Rand on each of these subjects based on Plaintiff's limited waiver of work product protection.

Messrs. Pineiro and Rand were both present on October 19, 2016 when Mr. Coffey wrote out his statement (Dkt. No. 65 at 2). The defendants also seek testimony from Mr. Rand about

7

any communications that may have occurred between Mr. Rand and Mr. Pineiro in Mr. Coffey's presence. They are entitled to Mr. Rand's testimony on this point insofar as any such communications were oral. "Protection under the work product doctrine . . . is . . . waived . . . when disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009) (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004)). "[T]he question is not whether the material will end up in the hands of others. Rather, the critical inquiry 'is whether disclosure of documents [or intangible information] protected by the work product doctrine . . . increases the opportunities for potential adversaries to obtain the information.'" *Bryan Corp. v. Chemwerth*, 296 F.R.D. 31, 40 (D. Mass. 2013) (quoting *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 360 (D. Mass. 2003)). Mr. Coffey was an unaligned third party who remained free to disclose the contents of any conversation he heard between Mr. Pineiro and Mr. Rand to whomever he chose, including the defendants. Indeed, the defendants were free to, and did, take Mr. Coffey's deposition (Dkt. No. 82-6). Accordingly, there is no work product protection for any oral communications that Mr. Pineiro had with Mr. Rand while in Mr. Coffey's presence.

The foregoing discussion sets the outside parameters of Plaintiff's waiver of work product protection concerning Mr. Coffey's statement and oral and written communications between Messrs. Pineiro and Rand.

IV.     CONCLUSION AND ORDER

Plaintiff's Motion is denied in part and otherwise granted consistent with the terms of this opinion. The Motion is DENIED insomuch as the defendants may take deposition testimony from Mr. Rand about facts that he learned as a result of his investigation in the instant case.

8

They also may take testimony from him about the circumstances surrounding Mr. Coffey's statement, including how it came to be obtained, at whose direction it was obtained, and the manner in which it was obtained, including any written or oral communications between Mr. Rand and Mr. Pineiro with respect to Mr. Coffey's statement. Finally, the defendants are entitled to ask Mr. Rand about any oral communications he had with Mr. Pineiro during their October 19, 2016 meeting with Mr. Coffey. In all other respects, the Motion is GRANTED.

It is so ordered. /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: May 10, 2017