UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSE L. ORTIZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-cv-40037-TSH |
| | ) | |
| THE CITY OF WORCESTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SANCTIONS
FOR PLAINTIFF'S SPOLIATION OF LIVERY RECORDS
(Dkt. No. 73)

I. PLAINTIFF'S CLAIMS

In this case, plaintiff Jose L. Ortiz ("Plaintiff") has sued the City of Worcester, its City Manager, its Chief of Police, and four detectives assigned to the city's Gang and Vice Squad. In a seven-count complaint, he asserts violations of his constitutional rights under the Fourth and Fourteenth Amendments to the United State Constitution pursuant to 42 U.S.C. § 1983 as well as associated state law claims (Dkt. No. 1). According to the complaint, Plaintiff's claims are based on events that occurred on March 8, 2014 when Worcester detectives executed a search warrant at 1069 West Boylston Street. Plaintiff, who was working as a livery driver on the day in question, was directed by USA Limo & Car Service, Inc. ("USA Limo"), the livery service for which he was working, to drive one Luis Garcia-Tobar to 1069 West Boylston Street. Plaintiff and his passenger arrived at the address as the search warrant was being executed. Mr. Garcia-Tobar was arrested. Plaintiff was allegedly assaulted by a police officer, handcuffed, and dragged into the house at 1069 West Boylston Street before the officers on the scene were ordered to release him for transportation by ambulance to the hospital for treatment of the

1

injuries inflicted on him by of one or more of the defendant police officers (*id.* at 3-7, ¶¶ 17-29, 51-76).

Presently before the court is Defendants' Motion for Sanctions for Plaintiff's Spoliation of Livery Records ("Defendants' Sanctions Motion") (Dkt. No. 73), which was referred to this court for decision by presiding District Judge Timothy S. Hillman (Dkt. No. 81). The court heard argument on motions in this case on April 4, 2017 (Dkt. No. 92). For the reasons set forth below, the court hereby DENIES Defendants' Sanctions Motion.

II. BASIS FOR DEFENDANTS' SANCTIONS MOTION

Plaintiff's complaint in the instant action was filed on February 27, 2015. Plaintiff alleged therein that, on March 8, 2014, the date of the events on which Plaintiff's claims are based, he "was employed and working as a driver for a livery company known as USA Limo & Car Service, Inc." (Dkt. No. 1 at 3, ¶ 17). He further alleged that USA Limo was, effective March 8, 2014, a duly licensed livery provider in Worcester, and that, on that date, he was in communication with USA Limo to receive directions about picking up and transporting customers to different locations in the city (*id.*, ¶¶ 18-19). During his deposition, Plaintiff testified that he began working as a livery driver around the beginning of February 2014 (Dkt. No. 82-2 at 11). He paid USA Limo $80 per week for customer referrals (*id.* at 13). He did not perform services for any livery company other than USA Limo (*id.*).

Section 10 of the Worcester Police Department Taxi and Livery Regulations required "livery licensees" to prepare a daily information log and retain such documents for two years. The regulations provided that a daily log was supposed to include: (a) the time and place of pick up and the time and place of destination; (b) the number of passengers; (c) the fee collected; (d) articles found in the vehicles after the departure of passengers; (e) name of driver and vehicle

2

number; and (f) name of passenger being transported (Dkt. No. 74-9 at 4). Pursuant to the Worcester City ordinance governing livery services, livery operators, such as USA Limo, and livery vehicles had to be licensed (Dkt. No. 74-8 at 3). Livery operators were required to own and control licenses for their affiliated livery vehicle drivers (*id.*). The ordinance further required that livery operators, such as USA Limo, "maintain a physical office with log books and pertinent records" (*id.* at 4). Neither the ordinance nor the Police Department regulations promulgated thereunder defined the term "livery licensee" (*id.*). Jose Baez, the owner of USA Limo, testified at his deposition that USA Limo kept records, in the form of logs, which listed the calls from customers, including the location of pick up (Dkt. No. 74-12 at 13). The log sheets created by USA Limo included the time the call was received and the driver to whom the pick-up was assigned (*id.* at 13-14, 26-29). USA Limo required its livery drivers to maintain a separate daily log that listed the time and location at which the livery driver picked up and dropped off each customer (*id.* at 14, 31). A livery driver was required to turn these log sheets into USA Limo every week on Monday following the week in which the driver provided the livery services in question (*id.* at 14). Mr. Baez acknowledged USA Limo's obligation to maintain a daily log under police regulations (*id.*). When Plaintiff was shown copies of the USA Limo Base Daily Logs from March 7 and 8, 2014 at his deposition, he testified that he "recall[ed] these," and that "[s]ome days [he] would and some days [he] wouldn't" (Dkt. No. 82-2 at 14). He testified that he would "put down" the destination to which he took a customer. The other information was recorded by the dispatcher. When asked whether he "kept a daily log for [him]self," he responded "no" (*id.* at 15).

     Plaintiff's complaint was served on the defendants on or around March 10, 2015 (Dkt. Nos. 4-10). On or around April 16, 2015, counsel for the defendants wrote to Plaintiff's counsel

3

requesting that Plaintiff "maintain and preserve all 'daily log' records from April 16, 2013 to the present as they [were] inherently discoverable in the present litigation" (Dkt. No. 74-7). On or around November 1, 2016, Plaintiff produced copies of Base Daily Logs of USA Limo dated March 7 and 8, 2014, along with an August 26, 2016 declaration signed by Mr. Baez to the effect that the Daily Base Logs from March 7 and 8, 2014 were the only documents that Mr. Baez still had that related to Plaintiff's work for USA Limo (Dkt. No. 74-11; Dkt. No. 74-12 at 30). Plaintiff testified at his deposition that he approached USA Limo for copies of its records a few months before his November 14, 2016 deposition (Dkt. No. 82-2 at 15). A fair inference from the record is that Plaintiff requested records from USA Limo on or around August 20, 2016, the date on which Mr. Baez signed his declaration. The record is silent on what prompted Plaintiff to request records from Mr. Baez in August 2016, nor does it explain what prompted Plaintiff to subsequently produce USA Limo records to the defendants.

III. ANALYSIS

The defendants contend that "[d]ue to Plaintiff's spoliation of the livery records, despite being specifically on notice of the Defendants' claim for the records, the ultimate sanction of dismissal of Plaintiff's suit should result" (Dkt. No. 74 at 10).[1] "'[S]poliation is the intentional, negligent, or malicious destruction of relevant evidence.'" *Hofer v. Gap, Inc.*, 516 F. Supp. 2d

---

[1] In the alternative, the defendants claim that, at the very least, they are entitled to a negative inference at summary judgment and at trial, which, in their view, apparently would consist of the fairly draconian inference or jury instruction that Plaintiff knew of and was a participant in a heroin distribution conspiracy and should be barred from testifying or otherwise presenting evidence that he was unaware of heroin distribution occurring at 1069 West Boylston Street and was surprised by the presence of the police (Dkt. No. 74 at 10). Normally, an instruction to the jury in the event that spoliation is established would inform the jurors that they could, but are not required to, conclude that the lost document(s) or object(s) would have been unfavorable to the spoliating party's case. *See, e.g., Booker v. Mass. Dep't of Pub. Health*, 612 F.3d 34, 45-46 (1st Cir. 2010).

4

161, 170 (D. Mass. 2007) (quoting *Townsend v. Am. Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997)). "If it is determined that such evidence has been destroyed, the next step is to decide the appropriate sanction to be imposed upon the spoliator." *Townsend*, 174 F.R.D. at 4 (citing *Corales v. Sea-Land Serv., Inc.*, 172 F.R.D. 10, 12-13 (D.P.R. 1997)). A district court has the power "to sanction a litigant where evidence is improperly lost, damaged, or destroyed, when necessary to prevent the non-offending party from suffering unfair prejudice." *Hofer*, 516 F. Supp. 2d at 170 (citing *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir. 1997)). "Possible sanctions include 'dismissal of the case, the exclusion of evidence, or a jury instruction on the "spoliation inference."'" *Id.* (quoting *Townsend*, 174 F.R.D. at 4 (quoting *Vazquez-Corales v. Sea-Land Serv., Inc.*, 172 F.R.D. 10, 13-14 (D.P.R. 1997)).

"Fundamentally, a court's decision whether to sanction a party for allegedly spoiling or destroying evidence depends on a finding that the party had a duty to preserve the evidence in question, which it breached." *Phillips v. Netblue, Inc.*, No. C-05-4401 SC, 2007 WL 174459, at *2 (N.D. Cal. Jan. 22, 2007). When a complaint has been filed (or litigation reasonably should be anticipated), "a litigant is under . . . a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984); *see also Perez-Velasco v. Suzuki Motor Co., Ltd.*, 266 F. Supp. 2d 266, 268 (D.P.R. 2003) (the duty to preserve material evidence arises during the period before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation). "The fundamental factor is that the document, or other potential objects of evidence, must be in the party's possession, custody, or control for any duty to preserve to attach." *Phillips*, 2007 WL

174459, at *3 (citing *MacSteel, Inc. v. Eramet N. Am.*, No. 05-74566, 2006 WL 3334011, at *1 (E.D. Mich. Nov. 16, 2006); *Townsend*, 174 F.R.D. at 5). A litigant does not have a duty to preserve evidence that is not in his custody or possession and over which he has no control. *Hofer*, 516 F. Supp. 2d at 170-71; *Townsend*, 174 F.R.D. at 5.

"Determining whether [Plaintiff] breached [his] duty of preservation requires [the] court to determine: 1) the scope of [Plaintiff's] duty of preservation, 2) whether the evidence in question falls within this scope, and 3) whether the actions taken by [Plaintiff] violated this duty." *Phillips*, 2007 WL 174459, at *2. Here, based on the record, the defendants' claims of spoliation fail at the first step for the simple reason that the defendants have failed to show that the documents they sought – the daily logs of USA Limo livery activities covering the five weeks that Plaintiff was affiliated with the company – were ever in Plaintiff's possession, custody, or control. The Worcester Police Department regulations are ambiguous on the question of whether Plaintiff, as opposed to USA Limo, had an obligation to create and maintain records of the livery services he provided for USA Limo customers. The ordinance did not define the term "livery licensee." It explicitly required that a livery operator, such as USA Limo, "maintain a physical office with log books and pertinent records," but did not impose the same duty on a livery vehicle driver (Dkt. No. 74-8 at 4). Deposition testimony of Plaintiff and Mr. Baez established that to the extent logs of Plaintiff's activities as a livery driver ever existed, those records were in the possession, custody and control of third party USA Limo rather than Plaintiff. Indeed, the defendants concede that the presiding District Judge has already denied the defendants' motion to compel because Plaintiff has represented that he possessed no logs of his daily livery activities while he was affiliated with USA Limo (Dkt. No. 91 at 1-2). As a general rule, spoliation sanctions are inappropriate when, as in the present case, the evidence that is lost

or destroyed (if it existed when this lawsuit was filed) was in the possession, custody or control of a third party. *See MacSteel*, 2006 WL 3334011, at *1; *Townsend*, 174 F.R.D. at 5.

This is so even if, under the regulations, Plaintiff qualified as a "livery licensee" and had a duty to create daily logs and keep them for two years. It plainly appears from the record that he did not do so. On this point, Plaintiff's testimony was consistent with that of Mr. Baez: for any week that Plaintiff was affiliated with USA Limo, he was required to turn over any daily logs that he generated to USA Limo. There was no deposition testimony or other evidence tending to suggest that Plaintiff kept copies for himself of any daily logs that he created and turned over to USA Limo or that he had copies of any such documents in his possession as of April 16, 2015, when defense counsel asked Plaintiff's counsel to preserve livery records (Dkt. No. 74-7). "[T]he party urging that spoliation has occurred must show that there is evidence [in the alleged spoliator's possession, custody, or control] that has been spoiled (i.e., destroyed or not preserved)." *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012) (citing *Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007)). This the defendants have failed to do. Plaintiff cannot be charged with spoliation on the basis that he failed to create or keep copies of records – records that would have dated from before Plaintiff had a basis for a suit against the defendants – even if, under applicable regulations, he should have created and kept copies of such records. *See id.* at 400 (a party's failure to collect evidence does not provide a basis for a spoliation claim); *cf. Phillips*, 2007 WL 174459, at *3 (defendants were not entitled to spoliation sanctions based on their claim that the plaintiff failed to create or memorialize evidence).

The defendants contend that even if Plaintiff did not have possession, custody, or control of any records related to his work for USA Limo when he filed this lawsuit, he can still be held

7

responsible for spoliation of evidence. In support of their request for sanctions up to and including dismissal of Plaintiff's claims, the defendants rely on *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) and *Perez-Velasco*, in which the court held that "'i[if] a party cannot fulfill th[e] duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.'" *Perez-Velasco*, 266 F. Supp. 2d at 268 (quoting *Silvestri*, 271 F.3d at 591). In *Perez-Velasco*, the plaintiffs brought suit based on an automobile accident allegedly caused by a manufacturing defect in a car one of the plaintiffs had recently purchased and was driving at the time of the accident. After the accident, the plaintiff owner of the car had it towed to a garage, from which the car was transported to the dealership that had originally sold the car to him. *Id.* at 268. While the car was at the dealership, plaintiffs' liability expert examined it. Thereafter, the owner of the car turned it over to a finance company, which had it repaired and resold it. By the time the defendants located the vehicle and inspected it, the vehicle had been repaired and showed no sign of the accident. *See id.* at 268-69. The court held that plaintiffs acted negligently in failing to preserve evidence – the car that was owned by one of the plaintiffs – thereby prejudicing the defendants. As a sanction, the court excluded the plaintiffs' expert report and any testimony by their expert. *Id.* at 269.

In *Silvestri*, the plaintiff was driving a car that belonged to his landlady. When he lost control of the car and slid off of the road, the airbag did not deploy. Within a week of the accident, the plaintiff, through counsel, retained two experts who inspected the car in its post-accident state and opined that the airbag should have deployed. The experts recommended to the plaintiff's attorney that General Motors be informed of the accident and that the company needed

8

to see the car. Some three months after the accident, the owner of the car transferred title of the car to his insurance company, which, in turn, sold the car to a company that repaired and sold it. 271 F.3d at 586-87. General Motors did not learn about the accident or the claim of a defect in the airbag until suit was filed almost three years after the accident. *Id.* at 587. Finding that General Motors was highly prejudiced by its lack of access to the vehicle before it was repaired, the district court dismissed the case on the basis that the plaintiff "had breached his duty either to preserve the vehicle or to notify General Motors about its availability and his claim." *Id.* at 589.

The *Silvestri* and *Perez-Velasco* opinions recognize what is, at most, a narrow exception to the "fundamental" rule that a "document or other potential object of evidence must be in a party's possession, custody, or control for any duty to preserve to attach." *Phillips*, 2007 WL 174459, at *3. In the *Silvestri* and *Perez-Velasco* cases, the plaintiffs failed to take steps to preserve the critical evidence that was the basis of their claims against the manufacturers of the cars they were driving when they were injured. In each of those cases, the plaintiffs also had retained experts who had examined the vehicles in a damaged state and proposed to offer testimony of defects that caused the plaintiffs' injuries. The decisions rested in significant part on the prejudice to the defendants when the plaintiffs' experts had access to the critical evidence in the case but the defendants' experts did not. *See Silvestri*, 271 F.3d at 593 (dismissal was necessary where "the prejudice to the defendant [wa]s extraordinary"); *Perez-Velasco*, 266 F. Supp. 2d at 269 (plaintiff's failure to preserve evidence "caused defendants undue prejudice"). Other courts have declined to find that a plaintiff has a duty to preserve evidence in the hands of a third party notwithstanding prejudice to a defendant. In *Townsend*, the court declined to impose a duty of preservation or notification on a plaintiff who did not have possession, custody, or control of the door to the freezer on her employer's premises that allegedly caused her injury.

9

*See Townsend*, 174 F.R.D. at 5; *see also MacSteel, Inc.*, 2006 WL 3334011, at *1 (corporate party had no duty to preserve relevant notes that were in the possession of its former employee). In *Townsend*, the court noted that the defendant "did not try very hard" to obtain an inspection when it possibly could have done so. *Townsend*, 174 F.R.D. at 5.

The fundamental factors that distinguish this case from *Silvestri* and *Perez-Velasco* are that: (1) the livery logs were not the basis of Plaintiff's claims against the defendants as were the damaged cars at issue in *Silvestri* and *Perez-Velasco*; and (2) there is nothing unfair about requiring the defendants to obtain livery records from USA Limo when they knew or should have known at the outset of the case that such records, to the extent any existed, would be in the possession of third party USA Limo. As to the first factor, this is not a case in which a plaintiff has failed to preserve for inspection an item that was the critical basis of his claim against the defendant. The livery records are of marginal, if any, relevance to Plaintiff's case. It is the defendants who contend that these records are important and could form the basis of a defense for which they might otherwise lack support. The defendants have cited to no authority that endorses imposing a duty on a plaintiff to seek out records or items that are in the hands of a third party when those records are irrelevant to the plaintiff's claims but may be helpful to an opposing party in crafting its defense.

As to the second factor, in *Silvestri* and *Perez-Velasco*, the courts were addressing the unfairness of permitting the plaintiffs to proceed with their cases based on expert evidence developed through access to vehicles in their post-accident condition when the defendants were denied the opportunity to develop countervailing evidence. In the present case, there is nothing unfair about ruling that the defendants were required to shoulder the responsibility of conducting their own discovery rather than trying to shift that responsibility to Plaintiff. As in *Townsend*, it

is apparent that the defendants made no effort to obtain the livery records beyond sending emails to Plaintiff's counsel. *Townsend*, 174 F.R.D. at 5. This is so even though the complaint unambiguously alleged that Plaintiff was working for USA Limo on March 8, 2014 (Dkt. No. 1 at 3, ¶ 17), and defense counsel was familiar with the contents of the Worcester livery ordinance and the police department's livery regulations (Dkt. No. 74-7). The defendants could have served a subpoena *duces tecum* on USA Livery, pursuant to Federal Rule of Civil Procedure 45(a)(1)(C) any time after the parties had conferred pursuant to Federal Rule of Civil Procedure 26(d). *See* Fed. R. Civ. P. 26(d)(1). *Contrast Townsend*, 174 F.R.D. at 5 (a litigant cannot employ the provisions of Rule 45 to obtain an inspection of an item in the hands of a third party until a complaint has been served). They failed to do so. By Defendants' Sanctions Motion, they seek to blame Plaintiff – and to have the court sanction him – for *their* failure to conduct routine third party discovery. What has been said is sufficient to dispose of any contention by the defendants that their April 16, 2015 preservation email to Plaintiff imposed a duty on him to notify third party USA Limo of an obligation to preserve livery records in USA Limo's possession. It is impossible to imagine where such a duty would end if it were recognized in circumstances where the records or items at issue are not a basis of a plaintiff's claim. It was the defendant's responsibility, in this adversary system, to conduct routine third party discovery.

"The facts in the present case . . . do not come close to establishing spoliation." *Hofer*, 561 F. Supp. 2d at 171. The defendants have failed to show that Plaintiff had responsive documents in his possession, custody, or control that he failed to produce in discovery. *See Gomez*, 670 F.3d at 399. "The law impose[d] no obligation upon [Plaintiff] to gather evidence other than the requirement that [Plaintiff] have sufficient evidence to support [his] claim." *Phillips*, 2007 WL 174459, at *3. Plaintiff's case does not arise from or depend upon the

contents of the livery records. The defendants have failed to establish that Plaintiff had any duty to preserve or produce documents, which were irrelevant to his claims and which, if they existed in April 2015, were in the possession, custody or control of third party USA Limo. *See Townsend*, 174 F.R.D. at 4-5.

  IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Sanctions for Plaintiff's Spoliation of Livery Records (Dkt. No. 73) is DENIED.

It is so ordered.

Dated: May 25, 2017               /s/ Katherine A. Robertson
                                  KATHERINE A. ROBERTSON
                                  U.S. MAGISTRATE JUDGE